FILED
DEC 07 2011
DEC07 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERVON DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. C-08-6735 |
| ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE NOLAN |
| ) | |
| THE WACKENHUT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF SHERVON DEAN'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

**COMES NOW,** the Plaintiff, Shervon Dean ("Dean" or "Plaintiff") by and through her counsel of record and pursuant to Rule 50(a) of the Federal Rules of Civil Procedure and requests that the Court grant Dean's Motion for a Judgment as a Matter of Law in her favor on the FMLA interference claim for the reasons stated below.

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886 (7th Cir. 2001)(citing Fed R. Civ. P. 50(a)). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Id.*, at 886-87 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000)). "In considering a motion for judgment as a matter of law, a court must review all the evidence in the record; it must 'draw all reasonable inferences

1

in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *E.E.O.C. v. Bd. Of Regents Of Univ. Of Wisconsin Sys.*, 288 F.3d 296, 301 (7th Cir. 2002)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000)). "[T]he question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the [nonmovant]." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008). "'A mere scintilla' of evidence, however, will not suffice." *Hall*, 536 F.3d at 619 (quoting *Walker v. Bd. of Regents of the Univ. of Wisc. Sys.*, 410 F.3d 387, 393 (7th Cir.2005)).

Looking at all of the evidence as a whole while drawing all reasonable inferences in favor of Wackenhut, Dean is entitled to a judgment as a matter of law as there is no legally sufficient evidentiary basis for a reasonable jury to find for Wackenhut on the FMLA interference claim. In order to prevail on an FMLA interference claim, an employee must establish that: (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). There is no need for any comparative evidence on the FMLA interference claim. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir. 1997)(It is inappropriate to apply *McDonnell Douglas* analysis to FMLA claims. FMLA's claims are not dependent on discrimination. Each employee has substantive FMLA rights that must be protected under the statute.); *See also Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir. 1997)(To establish FMLA claim, plaintiff shows that she is entitled to the benefit).

Under the first element, Dean was eligible for FMLA protection for prenatal care. "The FMLA defines 'serious health condition' as 'an illness, injury, impairment, or physical or mental

2

condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" *Whitaker v. Bosch Braking Sys. Div. of Robert Bosch Corp.*, 180 F. Supp. 2d 922, 926 (W.D. Mich. 2001)(citing 29 U.S.C. § 2611(11)). "The statute does not provide further guidance on what constitutes continuing treatment by a health care provider." *Id.* Under the Secretary of Labor's regulations addressing what constitutes continuing treatment by a health care provider, "pregnancy can be a serious health condition based upon continuing treatment by a health care provider only if the pregnancy produces a period of incapacity or **if prenatal care is sought**. *Whitaker*, 180 F. Supp. 2d at 928 (citing 29 C.F.R. § 825.114(a)(2)(ii))(emphasis added); *see also Wahl v. Seacoast Banking Corp. of Florida*, 09-81382-CIV, 2011 WL 861129 (S.D. Fla. Mar. 9, 2011)(holding "the time [plaintiff] took away from work for prenatal care appointments or for conditions of pregnancy, such as morning sickness, is statutorily protected" under the FMLA.). "Congress intended to provide special protection for pregnant employees and the regulations issued by the Department of Labor define pregnancy as a 'serious health condition' if it involves '*any* period of incapacity due to pregnancy, or for prenatal care.' " *Wahl v. Seacoast Banking Corp. of Florida*, 09-81382-CIV, 2011 WL 861129 (S.D. Fla. Mar. 9, 2011)(quoting 29 C.F.R. § 825.115(b)(emphasis supplied)). There is no requirement that the employee prove that the prenatal care sought is medically necessary in order for the FMLA to apply. Dean was seeking prenatal care. Thus, Dean was eligible for protection under the FMLA.

Under the second element, Wackenhut is an employer covered by the FMLA. Wackenhut has never disputed this.

Under the third element, Dean was entitled to FMLA leave for prenatal care. Wackenhut attempts to argue that Dean's prenatal care doctor's appointment was merely an "initial

examination," and thus it was not necessary for her to miss work. However, this argument is misguided and unfounded. The Secretary of Labor's regulations explicitly and repeatedly state that pregnancy can be a serious health condition if prenatal care is sought. *See* 29 C.F.R. § 825.114(a)(2)(ii) stating, "pregnancy can be a serious health condition based upon continuing treatment by a health care provider only if the pregnancy produces a period of incapacity or if prenatal care is sought"; *see also* 29 C.F.R. § 825.202(b)(1), stating, "A pregnant employee may take leave intermittently for prenatal examinations or for her own condition, such as for periods of severe morning sickness." Additionally, § 825.120 titled "Leave for pregnancy or birth" states in relevant part:

> (a) General rules. Eligible employees are entitled to FMLA leave for pregnancy or birth of a child as follows: ...
> (4) The mother is entitled to FMLA leave for incapacity due to pregnancy, for prenatal care, or for her own serious health condition following the birth of the child. Circumstances may require that FMLA leave begin before the actual date of birth of a child. An expectant mother may take FMLA leave before the birth of the child for prenatal care or if her condition makes her unable to work. The mother is entitled to leave for incapacity due to pregnancy even though she does not receive treatment from a health care provider during the absence, and even if the absence does not last for more than three consecutive calendar days. For example, a pregnant employee may be unable to report to work because of severe morning sickness.

29 C.F.R. § 825.120. Thus, the FMLA does not require that the employee prove that the prenatal care sought is medically necessary in order to be covered under the FMLA. Therefore, Dean's pregnancy was a serious health condition because she was seeking prenatal care, and she was entitled to FMLA leave for the prenatal care.

Under the fourth element, Dean provided Wackenhut with sufficient notice of her intent to take leave. "Generally speaking, it does not take much for an employee to invoke his FMLA rights; he must simply provide enough information to place the employer on notice of a probable basis for FMLA leave." *Righi v. SMC Corp.*, 632 F.3d 404, 409 (7th Cir. 2011). An employee

4

"need not expressly assert rights under the FMLA or even mention the FMLA in order to invoke his rights; he need only note that leave is requested for some reason covered by the FMLA." *Id.* at 409 (citing 29 C.F.R. § 825.303(b)). On Thursday, December 7, 2006, Dean submitted to her supervisor, Charles Breeding, the company's standard form to request time off on December 27, 2006. Dean indicated on the form that the reason for her request was for a "prenatal care doctor's appt." As the Court stated in its order denying Wackenhut's motion for summary judgment, "this is more than enough to put Wackenhut on notice of the potential for FMLA leave;" and "There is no question that Dean's notice, which mentioned prenatal care, implicated the FMLA." (Doc. 40 p. 11 & 12). Thus, Wackenhut was on sufficient notice of Dean's intent to take leave for a reason covered by the FMLA.

Under the fifth element, the employee need only show that her employer deprived her of an FMLA entitlement; no finding of ill intent is required. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

> DOL regulations clearly state that an employer interferes with an employee's rights under FMLA by "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220. It follows that an employer has discouraged an employee from taking FMLA leave when his or her supervisor interferes with the length and dates of leave, including denying leave out right. *See, e.g., Williams v. Shenango, Inc.*, 986 F.Supp. 309, 320-21 (W.D.Pa.1997) (holding that periodic denials of FMLA leave requests and limitations on which week the employee was allowed to take it presented a genuine issue of fact as to whether the employee's rights under FMLA were denied). The statute and the accompanying regulations protect an employee from *any* employer actions that discourage or interfere with the right to take FMLA leave. 29 C.F.R. § 825.220(1).

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003).

As established above, a pregnant employee is entitled to time off for prenatal care under the FMLA. Wackenhut interfered with Dean's rights under the FMLA by: (1) denying Dean's request to take time off for her scheduled prenatal care doctor's appointment; (2) threatening that

5

if she went to the prenatal care appointment her absence would be considered a "no call/no show" which results in immediate termination; and (3) refusing her attempted "call off."

On December 7, 2006, Dean filled out a written request for time off citing her prenatal care doctor's appointment scheduled for December 27, 2006 as her reason for needing time off. Wackenhut denied Dean's request knowing that the request was sought for the purpose of obtaining prenatal care. That is per se interference under the FMLA. Wackenhut's argument that it would have allowed her the time off at some later date misses the mark, especially considering the extensiveness of Wackenhut's interference. In addition, Wackenhut interfered with Dean's FMLA entitled leave even further. Dean was notified of Wackenhut's denial on December 26, 2007, the day before her scheduled appointment, when Dean's supervisor, Charles Breeding, gave Dean her denied request. Later that same day, Dean had a phone conversation with Anthony Cano, a Wackenhut area supervisor and human resources representative who determines whether an employee qualifies for FMLA leave. Dean informed Cano that she needed to attend the prenatal appointment to check the health of her unborn baby. Despite Dean's plea, Cano still refused her request for time off and told Dean not to use her pregnancy as a "crutch" and that pregnancy is not an illness. By denying Dean's multiple requests for time off to obtain prenatal care, Wackenhut repeatedly deprived her of an FMLA entitlement.

Wackenhut further deprived Dean of her FMLA entitlement by repeatedly threatening Dean that if she went to her prenatal appointment on December 27, 2006, her absence would be considered a "no call/no show." Cano told Dean during their phone conversation on December 26, 2006 that if she went to the prenatal appointment her absence would be considered a "No Call/No Show" which results in automatic termination. Later that same day, Tom McAuliffe, a Wackenhut supervisor, called Dean and left her a message, which Dean saved. In the message,

McAuliffe states, "if you do not show up tomorrow for the scheduled post, it will be considered a no call/no show." This is per se interference. Moreover, Wackenhut's employee handbook explicitly states that "No Call/No Show" absence(s) will result in immediate dismissal. Having worked for Wackenhut for five years, Dean knew that a "no call/no show" absence resulted in termination. Thus, by warning Dean that if she went to the prenatal appointment on December 27, 2006, her absence would be considered a "no call/no show" Wackenhut was interfering with Dean's FMLA entitled time off by attempting to scare her into not taking the time off by threatening disciplinary action. Furthermore, the Wackenhut Handbook specifies immediate termination in the event of a "no call/no show," which demonstrates the magnitude of discipline Dean would (and ultimately did) face for going to her prenatal care doctor's appointment.

Lastly, Wackenhut deprived Dean of her FMLA entitlement by refusing to accept Dean's attempted "call off." On December 26, 2006, after her conversation with Cano, Dean attempted to make a "call off" to avoid her absence being considered a "no call/no show." Dean called the National Call Center to report that she would not be at work on December 27, 2006. The tape recording of Tom McAuliffe's telephone message clearly states that Wackenhut refused to accept Dean's "call off" as complete. This refusal interfered with Dean's FMLA entitled time off to obtain prenatal care.

Thus, for the foregoing reasons, Wackenhut is liable for interference under the FMLA. Accordingly, the Court should grant Dean's motion for a judgment as a matter of law on this claim and enter judgment against Wackenhut and award Dean damages, including costs and attorneys' fees.

Respectfully submitted,

s/Lee Winston
s/Roderick T. Cooks


OF COUNSEL:

WINSTON COOKS, LLC
2 North 20th Street
Birmingham, AL. 35203
Phone 205-502-0940

## CERTIFICATE OF SERVICE

I served a copy of the foregoing via HAND DELIVERY on counsel

Christopher A. Kreid

December 7, 2011

s/Lee Winston